MEREDITH DESAUTELS TAFT (Bar No. 259725)
mdesautels@ylc.org
MARIA RAMIU (Bar No. 146497)
mramiu@ylc.org
**YOUTH LAW CENTER**
832 Folsom Street, Suite 700
San Francisco, CA 94107
Telephone:      (415) 543-3379
Facsimile:      (415) 956-9022

*Counsel for Plaintiffs Rashad Abdullah and T.A.*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RASHAD ABDULLAH**, individually and as the guardian for minor T.A.; and **T.A.**, a minor, by and through her guardian.<br><br>          Plaintiffs,<br><br>     v.<br><br>**CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO JUVENILE PROBATION DEPARTMENT CHIEF ALLEN NANCE, DEPUTY PROBATION OFFICER MOEGAGOGO TAMASESE, DEPUTY PROBATION OFFICER LYUDMILA BARANOV**, and **DOES 1-30**, inclusive.<br><br>          Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES (42 U.S.C. Section 1983 and pendent tort claims)**<br><br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      This case arises from the unlawful incarceration of T.A., a thirteen-year-old African-American girl, in San Francisco's juvenile hall. The San Francisco Juvenile Probation Department booked T.A. into the county's locked juvenile facility on Thursday, February 14, 2019. On Friday, February 15, 2019, a judge of the San Francisco Superior Court determined that there was insufficient probable cause for T.A.'s detention and ordered her release. Officers of the Juvenile Probation Department received that court order, but failed to release T.A. Instead, the Juvenile Probation Department held T.A. in custody for eleven days. It was not until February 26, 2019, when the Juvenile Probation Department brought T.A. before the judge who had issued the prior release order that T.A. was finally released.

2.      As a result of the actions by the San Francisco Juvenile Probation Department, T.A. was held against her will in a locked cell, deprived of her freedom, separated from the care and love of her family, and subjected to the control of the custodial officers. T.A.'s father, Rashad Abdullah, was similarly denied the care and companionship of his child.

3.      This civil rights and tort action seeks general, special, and punitive damages from Defendants for violating Plaintiffs' rights under the United States Constitution and California state law.

**JURISDICTION**

4.      This action arises under 42 U.S.C. Section 1983. Jurisdiction is based on 28 U.S.C. Sections 1331 and 1343.

5.      The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S. Section 1367 over the state law claims, which are so related to the federal claims in this action that they form part of the same case or controversy under Article II of the United States Constitution.

**VENUE/INTRADISTRICT ASSIGNEMENT**

6.      The claims alleged herein arose in the City and County of San Francisco, State of California. Therefore, venue and assignment are in the United States District Court for the Northern District of California, San Francisco or Oakland Divisions. 28 U.S.C. § 1391(b)(2); Civil L.R. 3-2(d).

1

## PARTIES

**A.**     **Plaintiffs**

7.     Plaintiff RASHAD ABDULLAH (hereinafter "Plaintiff Abdullah" or "Mr. Abdullah") is the father of minor T.A., and at the time of the incident alleged herein resided with T.A. in San Francisco, California.

8.     Plaintiff T.A. (hereinafter "Plaintiff T.A." or "T.A.") is an African-American minor who was thirteen years old at the time of the incident alleged herein. T.A. brings this action by and through her parent and guardian, Rashad Abdullah. T.A. is identified in this lawsuit by her initials pursuant to Federal Rules of Civil Procedure 5.2(a)(3).

**B.**     **Defendants**

9.     Defendant CITY AND COUNTY OF SAN FRANCISCO (hereinafter "Defendant City and County of San Francisco") is, and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California. The SAN FRANCISCO JUVENILE PROBATION DEPARTMENT (hereinafter "Juvenile Probation Department") is a municipal department operated by and under the authority of Defendant City and County of San Francisco.

10.     Defendant ALLEN NANCE (hereinafter "Defendant Chief Nance" or "Juvenile Probation Department Chief Nance") is, and at all times relevant herein was, the Chief of the Juvenile Probation Department, and, as such, was the final departmental decision-maker as to personnel issues, the final departmental decision-maker as to supervision of Juvenile Probation Department employees, the final departmental decision-maker as to training of Juvenile Probation Department employees, and head policymaker for Defendant City and County of San Francisco on matters related to the Juvenile Probation Department. At all times herein mentioned, Defendant Chief Nance was acting under color of law and within the scope of his employment with the Defendant City and County of San Francisco. Defendant Chief Nance is sued in his official and individual capacities.

11.     Defendant MOEGAGOGO TAMASESE (hereinafter "Defendant Tamasese" or "Officer Tamasese") was at all times relevant herein a deputy probation officer with the Juvenile Probation Department for the Defendant City and County of San Francisco, and was acting under color of law and

within the scope of his employment with the Defendant City and County of San Francisco. He is sued in his individual capacity.

12.     Defendant LYUDMILA BARANOV (hereinafter "Defendant Baranov" or "Officer Baranov") was at all times relevant herein a supervising probation officer with the Juvenile Probation Department for the Defendant City and County of San Francisco, and was acting under color of law and within the scope of her employment with the Defendant City and County of San Francisco. She is sued in her individual capacity.

13.     Defendants DOES 1 through 30 are persons or entities whose true names and capacities are presently unknown to Plaintiffs, who therefore sue these Defendants by fictitious names. Plaintiffs are informed and believe, and on that basis allege, that each of the Doe Defendants was an agent or employee of one or more of the named Defendants, and was acting within the course and scope of said agency or employment and under color of state law. Plaintiffs are further informed and believe, and based thereon allege, that each of the Doe Defendants is legally responsible in some manner for the occurrences herein alleged. All allegations in this Complaint that refer to the named Defendants refer in like manner to those Defendants identified as Does 1 through 30, inclusive. Plaintiffs will amend this Complaint to allege the true names and capacities of the Doe Defendants when they have been ascertained.

## ADMINISTRATIVE PREREQUISITES

14.     Plaintiffs each filed a claim with the City and County of San Francisco on April 11, 2019. The City and County of San Francisco denied both claims on April 25, 2019. Plaintiffs have exhausted all administrative remedies pursuant to California Government Code Section 910.

## FACTUAL AND STATUTORY BACKGROUND

A.      **Statutory and Policy Framework for Pre-Trial Custody of Minors**

15.     In California, when a minor is arrested, the arresting officer may take temporary custody of the minor and deliver the minor to the probation officer of the county. Cal. Welf. & Inst. Code § 626(d).

16.     Upon delivery of a minor who has been taken into temporary custody, the probation officer must immediately investigate the circumstances of the minor and the facts surrounding his or her being taken into custody. Cal. Welf. & Inst. Code § 628(a)(1).

17.     The probation officer is responsible for determining whether or not circumstances exist to justify bringing the minor into detention. *See id.* That duty may be performed by a deputy of the probation officer. *See* Cal. Welf. & Inst. Code § 7.

18.     California law presumes that a minor shall be released pretrial, unless certain circumstances are present. Specifically, Welfare and Institutions Code Section 628, subsection (a), paragraph (1), states that the probation officer "***shall immediately release*** the minor to the custody of his or her parent, legal guardian, or responsible adult," unless it can be demonstrated both that continuance in the home is contrary to the minor's welfare, and that one of the following three conditions exists: "(A) Continued detention of the minor is a matter of immediate and urgent necessity for the protection of the minor or reasonable necessity for the protection of the person or property of another. (B) The minor is likely to flee the jurisdiction of the court. (C) The minor has violated an order of the juvenile court." *See* Cal. Welf. & Inst. Code § 628(a)(1) (emphasis added).

19.     When the probation officer determines that a minor will not be released, the minor is held in detention in juvenile hall, which is under "the management and control of the probation officer." *See* Cal. Welf. & Inst. Code §§ 850-852.

20.     A minor who is taken into custody by either a peace officer or a probation officer must be released within forty-eight hours, excluding non-judicial days, unless within that time a petition to declare the minor a ward is filed with the juvenile court. *See* Cal. Welf. & Inst. Code § 631.

21.     When a probation officer retains a minor in custody, he or she shall immediately cause a petition to be filed with the clerk of the juvenile court, who shall set the matter for a detention hearing. *See* Cal. Welf. & Inst. Code § 630(a).

22.     Such minor shall be brought before a juvenile court judge for a detention hearing "as soon as possible," and no later than the end of the next judicial day after a petition is filed declaring the minor a ward or dependent child. *See* Cal. Welf. & Inst. Code § 632(a).

23.     However, minors whose detention hearing will occur more than forty-eight hours after arrest are constitutionally entitled to a judicial determination as to probable cause for the detention prior to the detention hearing. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (holding that a probable cause determination made within forty-eight hours of arrest complies with the Fourth Amendment); *In re Alfredo A.*, 6 Cal.4th 1212, 1232 (1994) (holding that under the Fourteenth Amendment "juvenile arrestees" must be afforded a judicial determination of probable cause for post-arrest detention that continues longer than seventy-two hours after arrest).

24.     It is the duty of the probation officer to take charge of a minor as ordered by the juvenile court. Cal. Welf. & Inst. Code § 280.

**B.     <u>Unlawful Incarceration of Minor T.A.</u>**

25.     On Thursday, February 14, 2019, minor T.A. was taken into police custody by officers of the San Francisco Police Department on charges related to a cell phone theft. Throughout the time period relevant herein, the charges remained unadjudicated.

26.     Upon information and belief, following T.A.'s arrest on February 14, the police officers contacted the Juvenile Probation Department. The police officers spoke to Deputy Juvenile Probation Officer Tan Nguyen, who told them to bring T.A. to the Juvenile Justice Center, San Francisco's locked juvenile custodial facility. The police officers delivered T.A. to the juvenile hall, where she was booked into custody, and contacted T.A.'s father, Rashad Abdullah, to notify him of T.A.'s arrest.

27.     Upon information and belief, in the morning of Friday, February 15, 2019, Defendant Officer Tamasese submitted a "Probable Cause" request to the juvenile division of the San Francisco Superior Court. Such a Probable Cause request seeks judicial review of the Juvenile Probation Department's decision to detain a minor. Officer Tamasese attached three documents to the Probable Cause request: the incident report from the San Francisco Police Department, a Detention Risk Instrument, and a Request for Petition.

28.     On Friday, February 15, 2019, the Honorable Daniel A. Flores, a judge in the juvenile division of the San Francisco Superior Court, having reviewed the Probable Cause request and the attached documents in T.A.'s case, made a finding that there was not sufficient probable cause to detain

T.A. and ordered her release. Upon information and belief, Judge Flores signed this release order at 3:30 p.m. on Friday, February 15, 2019, and the order was filed that day.

29.     The Juvenile Probation Department did not release T.A. Instead, upon information and belief, later in the evening of February 15, 2019, a *second* request for a judicial determination of Probable Cause was submitted to the juvenile court.

30.     Upon information and belief, this second request was submitted by Defendant Officer Baranov, who was Officer Tamasese's supervisor. Such request was submitted after Officer Tamasese told Officer Baranov that he had already submitted a previous request to the court. The second request included no mention of or reference to the request that had already been filed, or Judge Flores's order for release.

31.     Upon information and belief, the second request was submitted to the court electronically, using the court's remote system for reviewing Probable Cause requests outside of the court's normal hours of operation. The second request was reviewed and signed via the electronic system by the Honorable Monica F. Wiley, presiding judge of the juvenile division of the San Francisco Superior Court, who determined that there was sufficient cause for detention. Judge Wiley signed this order at 7:09 p.m. on February 15, nearly four hours after Judge Flores issued his order for T.A.'s release.

32.     Despite the fact that the court ordered T.A.'s release on February 15, the Juvenile Probation Department continued to hold T.A. in custody until Tuesday, February 26, 2019. She was finally released that day, eleven days after the court issued its release order.

33.     While T.A. was held in custody, she was confined in a locked cell. T.A. slept on a stuffed mattress on a concrete bed and she was cold. Her shoes had to remain outside of her cell. She was not allowed anything to write with in her cell. Lights remained on throughout the night, making it difficult for her to sleep. She felt isolated and alone, and she missed her family terribly.

34.     During T.A.'s incarceration, Mr. Abdullah was allowed only restricted contact with his daughter. Their visits were in a public space, under the supervision of the custodial officers, and Mr. Abdullah and T.A. were permitted only minimal physical contact during in-person visits.

35.     Upon information and belief, at no point prior to February 26, 2019, did officers of the Juvenile Probation Department take any steps towards complying with the February 15 court order to release T.A.

36.     Upon information and belief, at no point prior to February 26, 2019, did officers of the Juvenile Probation Department take any steps to alert the court of the release order issued by Judge Flores, despite opportunities to do so.

37.     On Wednesday, February 20, 2019, T.A.'s case was called for a detention hearing in Department 3 of the juvenile division of the San Francisco Superior Court, before Judge Ellen Chaitin, presiding. Present at the hearing were: T.A.; Officer Tamasese; John Delgado, assistant district attorney with the San Francisco District Attorney's Office; Doug Welch, deputy public defender with the San Francisco Public Defender's Office; Mr. Abdullah; Randy Walton, T.A.'s uncle; Christina Medina, Huckleberry Youth Programs; and Michelle De Young, youth advocate in the San Francisco Public Defender's Office.

38.     Upon information and belief, at the detention hearing, Judge Chaitin questioned why T.A. was detained in custody when T.A.'s co-minor in the case had been released on home detention. Judge Chaitin indicated that she had not read the police report, but understood from the detention report submitted by the Juvenile Probation Department that there was confusion in the police report about T.A.'s involvement in the incident.

39.     Upon information and belief, at no point during the hearing on February 20, 2019 did Officer Tamasese indicate to the court that two requests for a determination of Probable Cause had been filed, or that an order for release had been issued by Judge Flores on February 15. In fact, no mention or inquiry was made at all as to the court's prior review of probable cause or order for release. Nor was a copy of the order provided to T.A., Mr. Abdullah, or T.A.'s defense attorney. At the conclusion of the hearing, Judge Chaitin detained T.A. with a right of release, setting the matter for hearing on February 26 for a release plan to be presented to the court.

40.     On Tuesday, February 26, 2019—twelve days after her initial detention—T.A.'s case was called for a motion for release hearing in Department 3 of the juvenile division of the San Francisco Superior Court, before Judge Daniel A. Flores, presiding. Present at the hearing were: T.A.; Rebecca

Louie, assistant district attorney with the San Francisco District Attorney's Office; Robert Dunlap, deputy public defender with the San Francisco Public Defender's Office; Mr. Abdullah; and Michelle De Young, youth advocate in the Public Defender's Office. Both Officer Tamasese and Officer Baranov joined during the course of the hearing.

41.     Upon information and belief, during the hearing Judge Flores questioned Officer Tamasese as to why the Juvenile Probation Department had not complied with his order for release issued on February 15. Officer Tamasese stated that he was the one who had filed the first Probable Cause request. Officer Tamasese stated that by approximately 5:00 p.m., the Juvenile Probation Department had not received the court's order on that request, and Officer Baranov made the decision to submit a second Probable Cause request. Upon questioning by Judge Flores, Officer Tamasese stated that he did not follow up with the court clerk's office to inquire about the Probable Cause request that he had filed with the court.

42.     Upon information and belief, Officer Tamasese also indicated during the hearing that the Juvenile Probation Department had, in fact, received Judge Flores's release order, and that both Probable Cause orders from the court were contained in the Juvenile Probation Department's case file. Judge Flores thereafter ordered T.A. to be released from juvenile hall, and she was actually released later in the day on February 26, 2019.

43.     As a result of her incarceration, T.A. was deprived of her freedom and separated from the care and love of her family. T.A. suffered physical discomfort and restrictions, and was subject to the custodial control of the officers. T.A. was also mentally and emotionally injured as a result of her unlawful incarceration, which caused mental anguish, emotional distress, feelings of indignity and unjust treatment, reputational harm, fear, anxiety, humiliation, and trauma.

44.     Mr. Abdullah suffered the loss of his rights as a parent to the care, custody, and companionship of his child, the loss of her services as a family member, emotional distress resulting from T.A.'s unlawful incarceration, and expenses incurred in vindicating his parental rights.

**C.     Custom and Practice of the San Francisco Juvenile Probation Department**

45.     Upon information and belief, the Juvenile Probation Department has a longstanding practice and/or custom of failing to release youth who are entitled to release. Such practice and/or

custom has been approved and/or ratified by individuals with policymaking authority within the Juvenile Probation Department, including Defendant Chief Nance.

46.     Upon information and belief, the Juvenile Probation Department lacked written policies and procedures for obtaining and complying with judicial Probable Cause determinations. Departmental practices and policies failed to require timely follow-up on requests for judicial determinations of Probable Cause, failed to provide for appropriate review of judicial Probable Cause findings, and failed to require timely implementation of release orders.

47.     Upon information and belief, the Juvenile Probation Department and/or Defendant Chief Nance failed to provide appropriate and necessary training to and supervision of its employees regarding probable cause determinations and/or complying with judicial orders. At the time of this incident, the Juvenile Probation Department and/or Defendant Chief Nance were not tracking instances in which requests for Probable Cause findings were denied, nor were they tracking whether and when the Department had complied with judicial orders for release.

48.     Upon information and belief, the Juvenile Probation Department and/or Defendant Chief Nance were aware of repeated instances in which the Department failed to release a youth after the court had issued a release order. In at least two instances in 2017, the failure occurred on a Friday afternoon, causing the youth to be detained over the weekend in violation of the court order. With knowledge of these failures, the Department and/or Defendant Chief Nance promulgated updated policies regarding requests for judicial probable cause determinations in 2018, but did not remedy the flawed processes leading to unlawful detention of youth. Also, with knowledge of these failures, the Department and/or Defendant Chief Nance failed to implement training or supervision to prevent the unlawful incarceration of youth who are entitled to release.

**D.     Harm from the Practices of the San Francisco Juvenile Probation Department**

49.     Incarceration has a uniquely harmful impact on developing adolescents, whose brains have not yet fully matured.[1]

---

[1] National Research Council, *Reforming Juvenile Justice: A Developmental Approach* 91-92 (2013), http://www.njjn.org/uploads/digital-library/Reforming_JuvJustice_NationalAcademySciences.pdf.

50.     Incarceration of a young person conflicts with the conditions necessary for healthy adolescent brain development by separating her from trusted adults, exposing her to negative peer influences within the custodial facility, and extinguishing her autonomy and access to pro-social activities.[2]

51.     Incarceration of young people is associated with a range of immediate harms, including exacerbation of mental health issues, increased risk of self-harm,[3] separation from family, and educational losses in reading and math.[4] Incarceration also exposes youth to negative peer influences, termed the "peer contagion" effect, with placement in an institution resulting in increased criminogenic behaviors among youth.[5]

52.     Incarceration is also associated with poor criminological outcomes, such that even two to three days of pretrial detention can lead to increased rates of later recidivism.[6] Juvenile incarceration, in particular, results in lower rates of high school graduation and greater rates of adult incarceration.[7]

---

[2] *See id.* (The National Research Council identified three factors that promote healthy psychological development for young people: 1) the presence of a parent or parent-like adult who is involved with and concerned about the young person's development; 2) "inclusion in a peer group that values and models prosocial behavior and academic success;" and 3) opportunities to exercise "autonomous decision making and critical thinking" through activities and other pro-social settings).

[3] Barry Holman & Jason Ziedenberg, *The Dangers of Detention: The Impact of Incarcerating Youth in Detention and Other Secure Facilities*, Justice Policy Institute 8-9 (2006), http://www.justicepolicy.org/images/upload/06-11_rep_dangersofdetention_jj.pdf.

[4] Youth Law Center, *Educational Injustice: Barriers to Achievement and Higher Education for Youth in California Juvenile Court Schools* 14-15 (2016), http://www.ylc.org/wp/wp-content/uploads/EDUCATIONAL%20INJUSTICE.pdf.

[5] Uberto Gatti, Richard E. Tremblay, Frank Vitaro, *Iatrogenic Effect of Juvenile Justice*, 50(8) J. CHILD PSYCHOL. & PSYCHIATRY 996-97 (2009), https://pdfs.semanticscholar.org/a2d3/c794ac4724907d918f90f1989716becff3fe.pdf.

[6] Christopher T. Lowenkamp, et al., *The Hidden Costs of Pretrial Detention*, Arnold Foundation 19-20 (2013), http://www.arnoldfoundation.org/wp-content/uploads/2014/02/LJAF_Report_hidden-costs_FNL.pdf

[7] Anna Aizer & Joseph J. Doyle, Jr., *Juvenile Incarceration, Human Capital, and Future Crime: Evidence from Randomly Assigned Judges*, 130:2 Q. J. OF ECON. 759-803 (2015), https://doi.org/10.1093/qje/qjv003. Related working paper available electronically: Aizer & Doyle, National Bureau of Economic Research, Working Paper 19102 at 3 (2013), http://www.nber.org/papers/w19102.pdf.

COMPLAINT

53.     Incarceration of youth is also associated with long-term harms, including poor physical and mental health outcomes as an adult. Even short periods of confinement have been associated with higher rates of depression later in life.[8] Youth who serve time in detention also suffer poor psychosocial outcomes more than a decade after the incarceration occurred.[9]

54.     In short, recent scientific research has established what many have always known—that incarceration of young people inflicts significant and unique harm. Any incarceration of a minor must be viewed through this lens.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983

**Violation of T.A.'s constitutional right against unlawful incarceration**

**without due process.**

**(By T.A. Against All Defendants)**

55.     Plaintiff T.A. incorporates by reference all of the above allegations as though fully set forth herein.

56.     In doing the acts complained of in this Complaint, Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another, did act under color of state law to cause Plaintiff T.A. to be incarcerated when there was no legal basis to detain her and she had been ordered released by the court. Said Defendants continued to detain Plaintiff T.A., and continued to seek court orders for the detention of T.A., after it was known or should have been known that she was entitled to release based upon a court finding that her detention lacked probable cause.

---

[8] Elizabeth S. Barnert, et al., *How Does Incarcerating Young People Affect Adult Health Outcomes?*, 139(2) PEDIATRICS 7 (2017), http://pediatrics.aappublications.org/content/pediatrics/139/2/e20162624.full.pdf.
[9] Karen M. Abram, et al., *Sex and Racial/Ethnic Differences in Positive Outcomes in Delinquent Youth After Detention: A 12-Year Longitudinal Study*, 171:2 JAMA PEDIATRICS 123-32, http://jamanetwork.com/journals/jamapediatrics/article-abstract/2592310.

57.     The unlawful incarceration of Plaintiff T.A. was done consciously and with deliberate indifference to T.A.'s constitutional right to liberty. Defendants' failure to comply with a court order to release a thirteen-year-old girl, causing her to be held in locked custody for eleven days without a lawful basis, shocks the conscience. Such conduct deprived Plaintiff T.A. of her liberty rights guaranteed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

58.     Upon information and belief, the Juvenile Probation Department of Defendant City and County of San Francisco has previously failed to release youth who are entitled to release, and such failure is so commonplace as to amount to longstanding practice or custom of Defendant City and County of San Francisco, and is so widespread as to constitute standard operating procedure of said Defendant. Upon information and belief, such conduct was ratified by and/or acquiesced in by Defendants City and County of San Francisco, Juvenile Probation Department Chief Nance, and/or Does 21-30 who are high-ranking and/or policymaking officers within the Juvenile Probation Department, whose conduct constitutes deliberate indifference to the violation of T.A.'s constitutional right to liberty.

59.     Upon information and belief, Defendants City and County of San Francisco, Juvenile Probation Department Chief Nance, and/or Does 21-30 who are high-ranking and/or policymaking officers within the Juvenile Probation Department, failed to enact policies, training, or supervision to prevent the unlawful detention of youth, including policies to follow up on requests for judicial determinations of Probable Cause, to provide for appropriate review of judicial Probable Cause findings, and/or to ensure implementation of release orders. Such failures set into motion a course of action and/or constituted a knowing failure to terminate a course of action that said Defendants knew or should have known would result in the violation of T.A.'s constitutional right to liberty.

60.     Upon information and belief, Defendants' failure to release youth after it is known or should be known that they are entitled to release results from a failure to train and/or supervise employee officers regarding the proper, constitutional bases for detention and compliance with release orders. Such failures to train and/or supervise amount to deliberate indifference, where there is actual and/or constructive notice that youth are being detained after it is known or should be known that they are entitled to release.

61.     As a result of the violation of her rights under the Fourteenth Amendment to the United States Constitution by Defendants, Plaintiff T.A. suffered the injuries and/or damages as alleged in this Complaint.

62.     Upon information and belief, the conduct of Defendants Tamasese, Baranov, Nance, and/or Does 1-30 was intentional, willful, wanton, malicious, oppressive, fraudulent, and/or done with a conscious and/or reckless disregard for the rights of Plaintiff T.A. As a result, Plaintiff is entitled to an award of punitive and exemplary damages against said Defendants in amounts to be determined according to proof.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983

### Violation of T.A.'s constitutional right against unreasonable seizure.

### (By T.A. Against All Defendants)

63.     Plaintiff T.A. incorporates by reference all of the above allegations as though fully set forth herein.

64.     In doing the acts complained of in this Complaint, Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another, did act under color of state law to cause Plaintiff T.A. to be incarcerated when there was no legal basis to detain her and she had been ordered released by the court. Said Defendants continued to incarcerate Plaintiff T.A. after it was known or should have been known that she was entitled to release based upon a court finding that her detention lacked probable cause.

65.     In doing the acts complained of in this Complaint, Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another, did act under color of state law to seek judicial authorization for her confinement after the court had already issued an order for her release. Said Defendants continued to seek court orders for detention of Plaintiff T.A. after it was known or should have been known that she was entitled to release based upon a court finding that her detention lacked probable cause.

66.     The unlawful incarceration of Plaintiff T.A. was unreasonable and without probable cause. Upon finding that T.A.'s detention lacked probable cause, the juvenile court issued a release order extinguishing any legal basis for her detention. Subsequent incarceration of T.A. after the court found that there was no probable cause for her detention constituted a new seizure under color of state law by Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another. This "re-seizure"—based upon the same facts that the court had already deemed insufficient—was unsupported by probable cause and was objectively unreasonable. Such conduct deprived Plaintiff T.A. of her right against unreasonable seizure guaranteed under the Fourth Amendment to the United States Constitution.

67.     Upon information and belief, subsequent to the court's order releasing T.A., Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another, filed or caused to be filed requests for judicial authorization for the incarceration of T.A., with actual and/or constructive knowledge that the court had already denied such authorization. On Friday, February 15, 2019, Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another, filed or caused to be filed a second request for a determination of probable cause through a different system to be reviewed by a different judge on the same set of facts, after the first request had already been denied by the court. Then, on Wednesday, February 20, 2019, Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another, requested a court order for detention from yet another judge, without disclosing that multiple requests for a determination of probable cause had been filed the previous Friday, or that the court had denied the first request and ordered the minor released. Such conduct caused Plaintiff T.A. to remain in locked custody for eleven days after she was ordered released, depriving Plaintiff T.A. of her right against unreasonable seizure guaranteed under the Fourth Amendment to the United States Constitution.

68.     Upon information and belief, the unreasonable seizure of youth after it is known or should be known that there is no legal basis for their detention is sufficiently commonplace as to amount to longstanding practice or custom of the Juvenile Probation Department of the Defendant City and County of San Francisco, and is so widespread as to constitute standard operating procedure of said Defendant. Upon information and belief, such conduct was ratified by and/or acquiesced in by

Defendants City and County of San Francisco, Juvenile Probation Department Chief Nance, and/or Does 21-30 who are high-ranking and/or policymaking officers within the San Francisco Juvenile Probation Department, whose conduct constitutes deliberate indifference to the violation of T.A.'s constitutional right against unreasonable seizure.

69. Upon information and belief, Defendants City and County of San Francisco, Juvenile Probation Department Chief Nance, and/or Does 21-30 who are high-ranking and/or policymaking officers within the Juvenile Probation Department, failed to enact policies, training, or supervision to prevent the unlawful detention of youth, including policies to follow up on requests for judicial determinations of Probable Cause, to provide for appropriate review of judicial Probable Cause findings, and/or to ensure implementation of release orders. Such failures set into motion a course of action and/or constituted a knowing failure to terminate a course of action that said Defendants knew or should have known would result in the violation of T.A.'s constitutional right against unreasonable seizure.

70. Upon information and belief, Defendants' unreasonable seizure of youth after it is known or should be known that there is no basis for their detention results from a failure to train and/or supervise employee officers regarding the proper, constitutional bases for detention and compliance with release orders. Such failures to train and/or supervise amount to deliberate indifference, where there is actual and/or constructive notice that youth are being unreasonably seized after it is known or should be known that there is no basis for their detention.

71. As a result of the violation of her rights under the Fourth Amendment to the United States Constitution by Defendants, Plaintiff T.A. suffered the injuries and/or damages as alleged in this Complaint.

72. Upon information and belief, the conduct of Defendants Tamasese, Baranov, Nance, and/or Does 1-30 was intentional, willful, wanton, malicious, oppressive, fraudulent, and/or done with a conscious and/or reckless disregard for the rights of Plaintiff T.A. As a result, Plaintiff is entitled to an award of punitive and exemplary damages against said Defendants in amounts to be determined according to proof.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION

#### 42 U.S.C. § 1983

**Violation of Rashad Abdullah's and T.A.'s constitutional rights to familial association.**

**(By Rashad Abdullah and T.A., Each Individually, Against All Defendants)**

73.     Plaintiffs incorporate by reference all of the above allegations as though fully set forth herein.

74.     In doing the acts complained of in this Complaint, Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another, did act under color of state law to interfere without due process of law with Plaintiff Abdullah's fundamental liberty interest in companionship and society with his child, and Plaintiff T.A.'s fundamental liberty interest in her relationship with her father. In so acting, said Defendants were responsible for depriving Plaintiffs Abdullah and T.A. of their rights of familial association guaranteed by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

75.     Defendants interfered with Plaintiffs' rights to familial association by incarcerating Plaintiff T.A. in a locked custodial facility for eleven days without Plaintiff Abdullah's consent and without a lawful basis for incarcerating T.A. This incarceration of T.A. by Defendants occurred after it was known or should have been known that T.A. was entitled to release upon a court finding that her detention lacked probable cause. During this time, Defendants denied Plaintiffs Abdullah and T.A. each other's companionship, not allowing them to visit with the time and privacy needed to bond as family. Such unwarranted interference with Plaintiffs' right to familial association shocks the conscience, as Defendants were conscious of and/or deliberately indifferent to the unlawful separation of Plaintiffs Abdullah and T.A.

76.     Upon information and belief, unlawful interference with familial association is sufficiently commonplace as to amount to longstanding practice or custom of the San Francisco Juvenile Probation Department of Defendant City and County of San Francisco, and is so widespread as to constitute standard operating procedure of said Defendant. Upon information and belief, such conduct was ratified by and/or acquiesced in by Defendants City and County of San Francisco, Juvenile Probation Department Chief Nance, and/or Does 21-30 who are high-ranking and/or policymaking

officers within the San Francisco Juvenile Probation Department, whose conduct constitutes deliberate indifference to the violation of Plaintiffs' constitutional right to familial association.

77.     Upon information and belief, Defendants City and County of San Francisco, Juvenile Probation Department Chief Nance, and/or Does 21-30 who are high-ranking and/or policymaking officers within the Juvenile Probation Department, failed to enact policies, training, or supervision to prevent the unlawful separation of families, including policies to follow up on requests for judicial determinations of Probable Cause, to provide for appropriate review of judicial Probable Cause findings, and/or to ensure implementation of release orders. Such failures set into motion a course of action and/or constituted a knowing failure to terminate a course of action that said Defendants knew or should have known would result in the violation of Plaintiffs' constitutional right to familial association.

78.     Upon information and belief, Defendants' unconstitutional interference with familial association results from a failure to train and/or supervise employee officers regarding the proper, constitutional bases for detention and compliance with release orders. Such failure to train and/or supervise amounts to deliberate indifference, where there is actual and/or constructive notice that youth are being detained after it is known or should be known that they are entitled to release.

79.     As a result of the violation of Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution by Defendants, Plaintiffs Abdullah and T.A. suffered the injuries and/or damages alleged in this Complaint.

80.     Upon information and belief, the conduct of Defendants Tamasese, Baranov, and/or Does 1-30 was intentional, willful, wanton, malicious, oppressive, fraudulent, and/or done with a conscious and/or reckless disregard for the rights of Plaintiffs Abdullah and T.A. As a result, Plaintiffs are entitled to an award of punitive and exemplary damages against said Defendants in amounts to be determined according to proof.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

\\

\\

\\

\\

**FOURTH CAUSE OF ACTION**

**California Civil Code § 52.1**

**(By T.A. Against All Defendants)**

81.     Plaintiff T.A. incorporates by reference all of the above allegations as though fully set forth herein.

82.     In doing the acts complained of in this Complaint, Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another, did interfere, and attempted interference, by threats, intimidation, and coercion with Plaintiff T.A.'s peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, including but not limited to: the right to due process of law, the right to be free from unreasonable seizure, and the right to familial association. Such interference, and attempted interference, was intentional and deliberate, and/or done with reckless disregard to the violation of Plaintiff T.A.'s constitutional rights. It was achieved through the coercive custodial power of the Juvenile Probation Department, and done with actual and presumed knowledge of the court order for Plaintiff T.A.'s release.

83.     The conduct of said Defendants was done within the course and scope of their employment with Defendants City and County of San Francisco and Juvenile Probation Department Chief Nance. Defendants City and County of San Francisco and Chief Nance are therefore liable for said conduct under *respondeat superior*.

84.     As a direct and proximate result of said Defendants' violation of Plaintiff T.A.'s constitutional rights, Plaintiff suffered the injuries and/or damages alleged in this Complaint.

85.     Plaintiff is entitled to exemplary damages against said Defendants, in an amount to be determined according to proof, pursuant to California Civil Code Sections 52.1(b) and 52.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

\\
\\
\\
\\

COMPLAINT

**FIFTH CAUSE OF ACTION**

**California Government Code § 815.6**

**Failure to Discharge a Mandatory Duty**

**(By T.A. and Rashad Abdullah, Each Individually, Against All Defendants)**

86.     Plaintiffs incorporate by reference all of the above allegations as though fully set forth herein.

87.     California Government Code Section 815.6 provides for liability against a public entity when:

        a.      The public entity violates a mandatory duty imposed by an enactment;

        b.      The enactment is designed to protect against the kind of injury complained of by the plaintiff;

        c.      The plaintiff is in the class of persons protected by the enactment;

        d.      The violation proximately caused the injury; and

        e.      The public entity did not exercise reasonable diligence in discharging its duty established by the enactment.

88.     An enactment includes a federal or state constitutional provision, statute, charter provision, ordinance, or properly adopted regulation.

89.     Defendants were under a mandatory duty to release Plaintiff T.A. following the court's order for release. This duty is imposed pursuant to the rights to due process and against unreasonable seizure, as protected by the constitutions of both the United States and the State of California, and this duty is codified in California Welfare and Institutions Code Sections 628 and 280. Section 628 requires that an officer immediately release a minor unless it can be demonstrated upon the evidence before the court that continuance in the home is contrary to the minor's welfare and that one of the statutory conditions is present. Cal. Welf. & Inst. Code § 628(a)(1). Section 280 requires the county, through its probation officer, to take charge of minors as ordered by the court. Cal. Welf. & Inst. Code § 280. Such requirements constitute mandatory duties, enacted by state law, designed to protect minors such as T.A. from unwarranted and unnecessary incarceration and its attendant harms.

90.     Upon information and belief, Defendants, individually and/or while acting in concert with one another, did not exercise due diligence in discharging their mandatory duty to comply with the court's order that T.A. be released. Defendants did not release T.A. after it was known or should have been known that her detention lacked probable cause and she was entitled to release on Friday, February 15.

91.     The conduct of said Defendants was done within the course and scope of their employment with Defendants City and County of San Francisco and Juvenile Probation Department Chief Nance. Defendants City and County of San Francisco and Chief Nance are therefore liable for said conduct under *respondeat superior*.

92.     As a result of Defendants' violation of the mandatory duty to release Plaintiff T.A, both Plaintiff T.A. and Plaintiff Abdullah suffered the injuries and/or damages as alleged in this Complaint. WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### False Imprisonment

### (By T.A. Against All Defendants)

93.     Plaintiff T.A. incorporates by reference all of the above allegations as though fully set forth herein.

94.     A defendant is liable under California law for false imprisonment when:

        a.      There is nonconsensual, intentional confinement of a person;

        b.      Without lawful privilege;

        c.      For an appreciable period of time, however brief.

95.     A jailer can be held liable for false imprisonment if the jailer knew or should have known that the plaintiff's incarceration was unlawful.

96.     In doing the acts complained of in this Complaint, Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another, did act within the scope of their employment to cause Plaintiff T.A. to be incarcerated for eleven days when there was no legal basis to detain her. Such incarceration was nonconsensual and intention custodial confinement in the locked facility of San Francisco's juvenile hall. The incarceration lacked lawful privilege because there

was insufficient probable cause for her detention and her detention contradicted the court's release order, violating T.A.'s rights to due process and against unreasonable seizure.

97.     Defendants continued to detain Plaintiff T.A. after it was known or should have been known that she was entitled to release, and therefore Defendants are liable for the tort of false imprisonment. California Government Code Section 820.4 provides: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

98.     Pursuant to Government Code Section 815.2, Defendants City and County of San Francisco and Juvenile Probation Department Chief Nance are derivatively liable for the torts of their employees—Defendants Tamasese, Baranov, and/or Does 1-30—who were acting within the scope of their employment when they falsely imprisoned Plaintiff T.A.

99.     As a result of Defendants' false imprisonment of Plaintiff T.A., Plaintiff T.A. suffered the injuries and/or damages as alleged in this Complaint.

100.     Upon information and belief, the conduct of Defendants Tamasese, Baranov, and/or Does 1-30 was intentional, willful, wanton, malicious, oppressive, fraudulent, and/or done with a conscious and/or reckless disregard for the rights of Plaintiff T.A. As a result, Plaintiff is entitled to an award of punitive and exemplary damages against said Defendants in amounts to be determined according to proof.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### Negligence

### (By T.A. and Rashad Abdullah, Each Individually, Against All Defendants)

101.     Plaintiffs incorporate by reference all of the above allegations as though fully set forth herein.

102.     Defendant is liable under California law for negligence where:

a.     There is a legal duty to use due care;

b.     There is a breach of that duty; and

c.     The breach proximately causes plaintiff's injury.

103.   In doing the acts complained of in this Complaint, Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another, did act within the scope of their employment to cause Plaintiff T.A. to be incarcerated for eleven days after a court found that her detention lacked probable cause and ordered her release.

104.   Said Defendants owed a duty of care to Plaintiffs Abdullah and T.A., as said Defendants were the individuals responsible for complying with the due process and seizure requirements of the constitutions of both the United States and the state of California regarding the detention of minors. Said Defendants were also responsible for complying with California Welfare and Institutions Code Sections 628 and 280, to ensure appropriate release of minors to their parents or guardians when there is no legal basis for their detention.

105.   The conduct of said Defendants violated their legal duty to Plaintiffs Abdullah and T.A. to use due care in employing their custodial power over minors.

106.   Pursuant to California Government Code Section 815.2, Defendants City and County of San Francisco and Juvenile Probation Department Chief Nance are derivatively liable for the torts of their employees—Defendants Tamasese, Baranov, and/or Does 1-30—who were acting within the scope of their employment when they negligently incarcerated Plaintiff T.A. after a court had ordered her release based upon a finding that her detention lacked probable cause.

107.   As a result of Defendants' conduct, Plaintiff T.A. suffered the injuries and/or damages as alleged in this Complaint.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

<u>**EIGHTH CAUSE OF ACTION**</u>

**Interference with Parent-Child Relationship**

**(By Rashad Abdullah Against All Defendants)**

108.   Plaintiff Abdullah incorporates by reference all of the above allegations as though fully set forth herein.

109.   In doing the acts complained of in this Complaint, Defendants Tamasese, Baranov, and/or Does 1-30, individually and/or while acting in concert with one another, did act within the scope of their employment to intentionally interfere with Plaintiff Abdullah's right to his parent-child

COMPLAINT

relationship by incarcerating T.A. for eleven days after a court found that her detention lacked probable cause and ordered her release.

110.     Defendants violated Plaintiff Abdullah's right to custody of his child by imprisoning his daughter, Plaintiff T.A., without his consent and without a lawful basis. Such conduct amounts to tortious interference with Plaintiff Abdullah's parental rights because T.A. was taken into custody on public authority, there was a duty to release T.A. once there was no legal basis for the custody, and said Defendants had actual or constructive knowledge that the continued incarceration was without legal privilege.

111.     Pursuant to Government Code Section 815.2, Defendants City and County of San Francisco and Juvenile Probation Department Chief Nance are derivatively liable for the torts of their employees—Defendants Tamasese, Baranov, and/or Does 1-30—who were acting within the scope of their employment when they interfered with Plaintiff Abdullah's right to custody of his child, T.A.

112.     As a result of Defendants' conduct, Plaintiff Abdullah suffered the injuries and/or damages as alleged in this Complaint.

113.     Upon information and belief, the conduct of Defendants Tamasese, Baranov, and/or Does 1-30 was intentional, willful, wanton, malicious, oppressive, fraudulent, and/or done with a conscious and/or reckless disregard for the rights of Plaintiff Abdullah. As a result, Plaintiff is entitled to an award of punitive and exemplary damages against said Defendants in amounts to be determined according to proof.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## JURY DEMAND

114.     Plaintiffs hereby demand a jury trial in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief, as follows:

115.     For general damages in a sum according to proof;

116.     For special damages in a sum according to proof;

COMPLAINT

117.    For punitive and exemplary damages in a sum according to proof;

118.    For any and all statutory damages allowed by law;

119.    For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988 and California Civil Code Section 52.1(h);

120.    For cost of suit herein incurred; and

121.    For such other and further relief as the Court deems just and proper.


DATED:                              Respectfully submitted,

                                    By:  /s/ *Meredith Desautels Taft*
                                    MEREDITH DESAUTELS TAFT (Bar No. 259725)
                                    MARIA F. RAMIU (Bar No. 146497)
                                    **YOUTH LAW CENTER**
                                    832 Folsom Street, Suite 700
                                    San Francisco, CA 94107
                                    Telephone:     415-543-3379
                                    Facsimile:     415-956-9022
                                    mdesautels@ylc.org
                                    mramiu@ylc.org

                                    *Attorneys for Plaintiffs*