UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RASHAD ABDULLAH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 19-cv-05526-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF No. 43 |

**INTRODUCTION**

The plaintiffs, Rashad Abdullah and his daughter T.A., sued the City and County of San Francisco (the "CCSF") and San Francisco probation officers for civil-rights violations stemming from T.A.'s 11-day detention — for allegedly stealing a cell phone — after a San Francisco judge ordered T.A.'s release (based on a lack of probable cause).[1] The court previously granted the defendants' motion to dismiss the initial complaint's three claims alleging unconstitutional policies and practices, in violation of *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978), with leave to amend.[2] The plaintiffs filed an amended complaint, claiming that the juvenile-probation

---

[1] First Am. Compl. ("FAC") – ECF No. 42 at 6–10 (¶¶ 25–47). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Order – ECF No. 33 at 7–8.

ORDER – No. 19-cv-05526-LB

department (1) disregards the constitutional requirements regarding probable-cause determinations for in-custody youth, (2) fails to train on the constitutional requirements or discipline any failure to follow the requirements, (3) fails to provide notice of its probable-cause requests or court orders to minors or their attorneys and parents, (4) seeks probable-cause determinations from after-hours judges, amounting to forum shopping, and (5) retains youth in custody until their detention hearings, even if intervening conditions warrant release.[3] The CCSF moved to dismiss the *Monell* claims.[4] The court grants the motion in part and dismisses the *Monell* claims on all theories except theory three, failure to provide notice of probable-cause requests and determinations.

## STATEMENT

### 1. The Complaint

On February 14, 2019, San Francisco police officers arrested T.A. for stealing a cell phone.[5] The police report reflects that the victim said that another minor (not T.A.) took the phone.[6]

The next day (a Friday), defendant Moegagogo Tamasese, a probation officer, submitted an ex parte probable-cause petition to the Superior Court.[7] The petition attached the police report, a "Detention Risk Assessment," and a "Request for Petition."[8] That afternoon, at around 3:30 p.m., a Superior Court judge (Daniel Flores) found no probable cause and ordered T.A.'s release.[9] The complaint alleges that "[u]pon information and belief," the probation department's practice was to retrieve the court's probable-cause order directly from the Superior Court Clerk's office, in person, because there was no other way to get the order.[10] Officer Tamasese "made no effort to

---

[3] FAC – ECF No. 42 at 19–21 (¶¶ 72–75); 23–25 (¶¶ 84–87), 26–27 (¶¶ 93–96).

[4] Mot. – ECF No. 43.

[5] FAC – ECF No. 42 at 6 (¶ 25).

[6] *Id.*

[7] *Id.* at 6 (¶ 27), 7 (¶ 30).

[8] *Id.*

[9] *Id.* at 6–7 (¶ 28).

[10] *Id.* at 7 (¶ 29).

obtain Judge Flores's order from the Clerk's office prior to the office's closure that day."[11] Because the process was ex parte, Officer Tamasese knew that T.A. and her father did not know about the probable-cause request or Judge Flores's order.[12] That evening, after the Clerk's office was closed, Officer Tamasese's supervisor, Lyudmila Baranov (also a defendant), submitted a second probable-cause petition — via the court's electronic system for after-hours probable-cause requests — that was essentially identical to the first request and that did not mention the first request (despite her knowledge of it).[13] At 7:09 p.m., a different judge (Monica Wiley) — also via the court's electronic system — issued an order finding probable cause to detain T.A.[14]

On Wednesday, February 20, 2019, a third judge (Ellen Chaitin) held a detention hearing (attended by Officer Tamasese, the assistant D.A., the deputy public defender, a youth advocate from the public defender's office, someone from a youth program, and T.A.'s father and uncle).[15] Officer Tamasese submitted a detention report recommending detention.[16] The report did not mention the two probable-cause requests or Judge Flores's release order.[17] Judge Chaitin said that she had not read the police report but understood from Probation's detention report that there was confusion in the police report about T.A.'s involvement.[18] She questioned why T.A. was still in custody when the co-defendant (also a minor) had been released to home detention.[19] In response to the questioning, Officer Tamasese did not mention the two probable-cause requests and orders even though he knew that Judge Chaitin's review would not encompass them.[20] T.A. remained in custody until February 26, 2019, when Judge Flores (the first judge) ordered her released (at a

---

[11] *Id.*

[12] *Id.* (¶ 30).

[13] *Id.* at 7–8 (¶¶ 31–33).

[14] *Id.* (¶ 33).

[15] *Id.* at 8 (¶ 39), 9 (¶ 41).

[16] *Id.* at 8–9 (¶ 40).

[17] *Id.*

[18] *Id.* at 9 (¶ 41).

[19] *Id.*

[20] *Id.* (¶ 42).

hearing attended by both probation officers, and where Officer Tamasese acknowledged that he did not follow up on his first probable-cause request and had both orders).[21]

On November 20, 2019, the petition against T.A. was dismissed.[22]

The complaint names the following defendants: the CCSF, Officers Tamasese and Baranov, and Probation Department Chief Allen Nance.[23] It has eight claims. Three are § 1983 claims against all defendants, charging individual and *Monell* theories of liability: (1) unlawful incarceration without due process, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 (by T.A.); (2) unreasonable seizure based on the allegedly unlawful detention, in violation of the Fourth Amendment and § 1983 (by T.A.); and (3) unlawful deprivation of the right to familial association, in violation of the First, Fourth, and Fourteenth Amendments and § 1983 (by T.A. and Mr. Abdullah).[24] The theory of *Monell* liability is that the Probation Department's policies are to (1) disregard the constitutional requirements regarding probable-cause determinations for in-custody youth, (2) fail to provide notice of probable-cause requests or determinations to minors or their attorneys and parents; (3) seek probable-cause determinations from after-hours judges, amounting to forum shopping; (4) retain youth in custody until their detention hearings, even if intervening conditions warrant release; and (5) fail to train probation officers on the constitutional requirements or discipline any failure to follow the requirements.[25]

## 2. Procedural History

The plaintiffs filed their initial complaint in September 2019.[26] The court previously dismissed the *Monell* claims with leave to amend.[27] The plaintiffs filed their amended complaint with

---

[21] *Id.* at 8 (¶ 34), 10 (¶ 47).

[22] *Id.* at 8 (¶ 34).

[23] *Id.* at 3–4 (¶¶ 9–12).

[24] *Id.* at 18–25 (¶¶ 67–98).

[25] *Id.* at 19–21 (¶¶ 71–75), 23–25 (¶¶ 84–87), 26–27 (¶¶ 93–96).

[26] Compl. – ECF No. 1.

[27] Order – ECF No. 33 at 7–8.

additional *Monell* allegations.[28] The CCSF then moved to dismiss the *Monell* claims (embedded in claims one, two, and three).[29] The court held a hearing on May 21, 2020.[30] All parties have consented to the undersigned's jurisdiction.[31]

## GOVERNING LAW

**1. Rule 12(b)(6)**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

---

[28] FAC – ECF No. 42 at 11–16 (¶¶ 50–60).
[29] Mot. – ECF No. 43.
[30] Minute Entry – ECF No. 53.
[31] Consent Forms – ECF Nos. 8, 13.

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) (citations and internal quotation marks omitted).

**2.  *Monell***

Liability against a government entity starts from the premise that there is no respondeat superior liability under 42 U.S.C. § 1983, i.e., no entity is liable simply because it employs a person who has violated a plaintiff's rights. *Monell*, 436 U.S. at 691; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Local governments can be sued directly under § 1983 only if they maintain a policy or custom that results in a violation of plaintiff's constitutional rights. *Monell*, 436 U.S. at 690–91. To impose *Monell* entity liability under § 1983 for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40*, 130 F.3d 432, 438 (9th Cir. 1997).

"There are three ways to show a policy or custom of a municipality:

> (1) by showing a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quotation omitted).

The plaintiffs claim *Monell* violations based on a long-standing practice and custom, including a failure to train probation officers on the constitutional requirements.[32]

The practice or custom must consist of more than "random acts or isolated events" and instead, must be the result of a "permanent and well-settled practice." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1998), *overruled on other grounds by Bull v. City and Cty. of*

---

[32] FAC – ECF No. 42 at 11–16 (¶¶ 50–60); Opp'n – ECF No. 45 at 15–21.

*San Francisco*, 595 F.3d 964 (9th Cir. 2010); *Parker v. City of Pittsburg*, No. 17-cv-01563-LB, 2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017). The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011); *Leon v. Hayward Bldg. Dep't*, No. 17-cv-02720-LB, 2017 WL 3232486, at *3 (N.D. Cal. July 31, 2017) "Isolated or sporadic incidents," by contrast, will not support *Monell* liability against a municipality. *Hunter*, 652 F.3d at 1233.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* "To satisfy [§ 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "Only then 'can such a shortcoming be properly [thought] of as a city policy or custom that is actionable under § 1983.'" *Heyward v. BART Police Dep't*, No. 3:15-cv-04503-LB, 2016 WL 730282, at *6 (N.D. Cal. Feb. 24, 2016) (cleaned up) (quoting *City of Canton*, 489 U.S. 378, 389 (1989)).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. "The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *City of Canton*, 489 U.S. at 389 (1989). "A less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability on municipalities." *Id.* Thus, "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. "Policymakers' continued adherence to an approach that they know or

should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the deliberate indifference — necessary to trigger municipal liability." *Id.* "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

## ANALYSIS

The plaintiffs claim that T.A.'s 11-day incarceration resulted from the Probation Department's policies and practices, in violation of *Monell*: "1) a policy and custom of disregarding the constitutional requirements related to probable cause for youth in their custody[]; 2) a policy and custom of providing no notice of probable cause requests and determinations[]; 3) a policy and custom of preferring and seeking out determinations of probable cause from the judges overseeing the after-hours process[]; and 4) a policy and custom of retaining youth in custody until their detention hearings in juvenile court, regardless of intervening determinations warranting release[]."[33] The CCSF moved to dismiss the *Monell* claims on the ground that the harm here did not result from the probation officer's failure to follow the policies (by, for example, waiting more than 48 hours to seek a probable-cause determination or only seeking a probable-cause determination through the after-hours procedures).[34] The court grants the motion to dismiss on all grounds except the ground that there is no notice of probable-cause requests and determinations.

The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385; *Reasoner v. City of Pittsburgh*, No. 18-cv-07674-TSH, 2019 WL 3503066, at *9 (N.D. Cal. Aug. 1, 2019).[35] Except for the claim that Probation

---

[33] Opp'n – ECF No. 45 at 6 (citing FAC – ECF No. 42 at 19–21 (¶¶ 72–75), 23–25 (¶¶ 84–87), 26–27 (¶¶ 93–96)) (internal citations omitted); FAC – ECF No. 42 at 11–16 (¶¶ 50–60).

[34] Reply – ECF No. 46 at 2–3.

[35] FAC – ECF No. 42 at 13–14 (¶¶ 54–55).

does not disclose the probable-cause requests and determinations, the harm here did not result from any of the plaintiffs' claimed theories of *Monell* liability.[36]

First, the probation officer did not disregard the probable-cause process, seek a probable-cause determination after 48 hours, or follow the Probation Department's alleged 72-hour rule. Instead, he sought the warrant within 48 hours.

Second, the plaintiffs cite no authority to support a conclusion that seeking a probable-cause determination ex parte is constitutionally offensive. Any error results from the officer's failure to tell the court and parties of the two requests and determinations, not the ex parte nature of the request.

Third, the alleged preference for after-hours procedures is not implicated here: the officer sought a probable-cause determination during court hours, and his supervisor invoked the after-hours procedure only after Probation did not obtain Judge Flores's order during business hours. Assuming the truth of the plaintiffs' allegations (that the probation officer needed to pick up the order in person at the Clerk's office), the alleged failure to go to the Clerk's office on a Friday afternoon followed by use of the court's after-hours procedures is problematic only because the probation officer failed to disclose the two requests and orders, not because the process is constitutionally defective. Also, the categorical argument — that after-hours judges are more likely to detain — is not grounded in any empirical allegation and does not plausibly plead a claim of impermissible forum-shopping. It is perhaps plausible that different judges reach different results on the same facts. But it is not plausible that categorically, judges who cover different shifts (business hours versus after hours) are more likely to find probable cause to detain.

Fourth, it may be bad policy to detain juveniles when intervening circumstances warrant release. But when there is a judicial probable-cause determination and a detention order, the law permits detention until the detention hearing. Again, the problem here is not the policy: it is the probation officer's failure to disclose both requests and orders.

---

[36] *Id.* at 19–21 (¶¶ 72–75), 23–25 (¶¶ 84–87), 26–27 (¶¶ 93–96).

1    Fifth, the failure-to-train argument (at least in part) is that the Probation Department's
2 violations of the probable-cause rules — ignoring the 48-hour rule in favor of a 72-hour policy,
3 failing to train probation officers about the rules, and failing to discipline probation officers when
4 they break the rules — are so systemic that they infect probation officers, rendering them cavalier
5 to the law. But the probation officer here followed the 48-hour rule. The CCSF's alleged policy of
6 inaction is not the functional equivalent of a decision by the CCSF to violate the Constitution and
7 instead is an argument that the CCSF has respondeat superior liability for the probation officer's
8 alleged error. *City of Canton*, 489 U.S. at 389; *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th
9 Cir. 2001) ("the identified deficiency in a local governmental entity's training program must be
10 closely related to the ultimate injury"). This is not a *Monell* violation. That said, to the extent that
11 the failure-to-train claim is based on training about the policy not to disclose probable-cause
12 requests and determinations, the failure-to-train theory survives at the pleadings stage.

13   Sixth, the plaintiffs also predicate the *Monell* claim on three occasions (two in 2017 involving
14 Friday probable-cause determinations) where probation officers did not comply with court orders
15 for release. There are relatively few release orders: no more than 50 and possibly many fewer.[37]
16 Outside parties, not Probation, discovered the three identified errors.[38] The CCSF contends that
17 the numbers are too few to support a *Monell* claim.[39] But if in the juvenile-probation system,
18 probable-cause requests and determinations are not communicated to the parties, then that policy
19 may be constitutionally problematic.

20   Judge Flores discovered the extended detention here during the February 26 court appearance.
21 Plausibly, the lack of notice (as a matter of policy) to parties about probable-cause determinations
22 was the moving force behind T.A.'s detention from February 15 to February 26. *Plumeau*, 130
23 F.3d at 432; *see Henry v. Cty. of Shasta*, 132 F.3d 512, 521 (9th Cir. 1997) (four incidents over
24 seven years, given the plaintiff's evidence about his treatment following his arrest for a broken

---

[37] *Id.* (¶ 55).

[38] *Id.*

[39] Reply – ECF No. 46 at 3–6.

taillight, could support a *Monell* claim); *Lapachet v. Cal. Forensic Med. Grp.*, Inc., 313 F. Supp. 3d 1183, 1193 (E.D. Cal. 2018) (policies and practices regarding in-custody medical treatment resulted in the plaintiff's becoming a quadriplegic); *Becker v. Sherman*, No. 1:16–cv–0828 AWI MJS (PC), 2017 WL 6316836, at *9 (E.D. Cal. Dec. 11, 2017) (policies regarding the housing of transgender plaintiffs plus four assaults against the plaintiff supported the *Monell* claim).

That said, if lack of notice is not the policy, then the three incidents are mistakes that do not support a claim of *Monell* liability. *Hunter*, 652 F.3d at 1233; *cf. Lawman v. City and Cty. of San Francisco*, 159 F. Supp. 3d 1130, 1146–47 (N.D. Cal. 2016) (more than 100 complaints and testimony by a county nurse supported the inference of a policy or custom of improper public-intoxication arrests); *Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp. 3d 1162, 1173 (E.D. Cal. 2019) (highlighted three examples and identified "numerous prior cases"); *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027–29 (9th Cir. 2015) (ten citizen complaints about the officer; three involved excessive force; over 30 internal-affairs incidents regarding the officer since 2007, 19 involving use of a baton or flashlight; reversed district court's judgment on *Monell* claims).

In sum, the *Monell* claims survive at the pleadings stage to the extent that they are predicated on (1) a policy of not disclosing probable-cause requests and determinations to minors, their parents, their attorneys, and (it seems) the court and (2) improper training on the policy.

## CONCLUSION

The court grants in part and denies in part the CCSF's motion to dismiss.

This disposes of ECF No. 43.

**IT IS SO ORDERED.**

Dated: May 23, 2020

_____
LAUREL BEELER
United States Magistrate Judge